141 F.3d 1179
 2 Cal. Bankr. Ct. Rep. 47
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
In re: Darrell D. SMITH, Debtor.
Darrell D. SMITH, Appellant,
v.
JOHN PETER LEE, LTD.; Tom Grimmett, Trustee of The Chapter
7 Estate, Appellees.
 No. 96-17214.
D.C. No. CV-96-00133-PMP.
 United States Court of Appeals,
Ninth Circuit.
 .
Argued and Submitted: Dec. 11, 1997.
Decided Mar. 20, 1998.
 
 Appeal from the United States District Court for the District of Nevada Philip M. Pro, District Judge, Presiding.
 Before BROWNING, PREGERSON, and HAWKINS, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Because the parties are familiar with the factual and procedural history of this case, we will not recount it here except as necessary to clarify our decision.
 
 
 3
 I. The Bankruptcy Court Had Sufficient Cause To Convert Smith's Chapter 11 Reorganization Plan into a Chapter 7 Liquidation.
 
 
 4
 The bankruptcy court properly converted Smith's Chapter 11 reorganization plan to a Chapter 7 liquidation pursuant to 11 U.S.C. § 1112(b), which permits such conversion for cause. That section permits conversion if there is a "material default by the debtor with respect to a confirmed plan," 11 U.S.C. § 1112(b)(8), or there is an "inability to effectuate substantial consummation of a confirmed plan," 11 U.S.C. § 1112(b)(7). A bankruptcy court's decision to convert a Chapter 11 reorganization into a Chapter 7 liquidation for cause is reviewed for an abuse of discretion. See Johnston v. Jem Dev. Co., 149 B.R. 158, 160 (9th Cir.BAP1992).
 
 
 5
 The bankruptcy court found that Smith's reorganization plan imposed two deadlines: (1) Smith had a five year deadline to repay his creditors and (2) Smith had a threshold deadline that required him to make reasonable efforts to produce and market prints of his Maxfield Parrish painting, Daybreak, during the pendency of the plan. The court found that Smith was in material default of the plan because he failed to meet his threshold deadline to make reasonable efforts to produce and market these prints.
 
 
 6
 The plain language of the reorganization plan requires Smith to make reasonable efforts to produce and market prints of Daybreak. Moreover, the bankruptcy court explicitly told Smith that he had an obligation to make such efforts at the hearing on the motion to convert held on May 1, 1995, and warned Smith that it would convert his case to a Chapter 7 liquidation if he failed to do so. The court repeated this admonition at the status hearing held on October 24, 1995. Despite these repeated and explicit warnings, Smith exerted minimal efforts to produce or market prints of Daybreak. The bankruptcy court therefore did not abuse its discretion in finding that Smith materially defaulted on his confirmed Chapter 11 plan.
 
 
 7
 The bankruptcy court also had cause to convert Smith's Chapter 11 reorganization plan into a Chapter 7 liquidation because of Smith's inability to substantially consummate the reorganization plan. Smith's Chapter 11 reorganization plan identified two sources of funding to repay Smith's creditors: (1) the proceeds of Smith's community property claim that related to his former wife's interest in the Tropicana Hotel & Casino ("the Tropicana litigation") and (2) the production and sale of prints of Daybreak.
 
 
 8
 When the court conducted the hearing on the motion to convert, Smith had already obtained a quantum meruit recovery of only $80,000 in the Tropicana litigation. Smith's first method of funding the plan thus failed to even approach his "conservative" estimate that the Tropicana litigation was worth "at least $9,000,000.00." Smith's second method of funding the plan likewise proved inadequate. As the previous discussion reveals, Smith failed to make "reasonable efforts" to produce and market prints of Daybreak. Indeed, Smith concedes that printing Daybreak "proved [i]nfeasible." Therefore, the bankruptcy court did not abuse its discretion in finding that Smith could not substantially consummate the plan.
 
 
 9
 II. The Bankruptcy Court Had Jurisdiction To Vest Smith's Assets into a Chapter 7 Estate upon Conversion.
 
 
 10
 Smith also argues that the bankruptcy court did not have jurisdiction to convert his Chapter 11 reorganization plan to a Chapter 7 liquidation under § 1112(b). Specifically, Smith argues that the bankruptcy court did not have jurisdiction over his assets after confirmation of his reorganization plan because § 1141(b) and (c) provide that confirmation of a plan vests all of the property of the estate in the debtor free and clear of all intervening interests. Therefore, he argues that because Daybreak was vested in him upon confirmation of the reorganization plan, the court did not have the authority to "revest" the painting into a Chapter 7 estate upon conversion. Smith concedes that a bankruptcy court retains post-confirmation jurisdiction over the debtor's assets if the reorganization plan limits the vesting provisions of § 1141(b) or if a plan expressly provides for ongoing jurisdiction, but argues that his plan failed to do so.
 
 
 11
 Smith's argument fails because his reorganization plan did limit the vesting provisions of § 1141(b) and his plan also explicitly provided that the bankruptcy court would have ongoing jurisdiction over the reorganization proceedings. First, ownership of Daybreak did not vest in Smith free and clear of all claims and intervening interests upon confirmation. Section 1141(b) provides that: "Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor." (Emphasis added.) Thus, plan provisions may prevent the debtor's property from vesting in the debtor. A plan may prevent such vesting even if "[t]he plan does not state in unambiguous terms that the property of the estate does not revest in the debtor." In re Hillis Motors, Inc., 997 F.2d 581, 589 (9th Cir.1993).
 
 
 12
 In Hillis Motors, the debtor's confirmed plan provided, inter alia, that (1) the management and control of the debtor business would remain in the trustee's hands, (2) a fixed percentage of the company's post-confirmation profits "were to be paid to the estate for disbursement as ordered by the bankruptcy court," and (3) "[t]he bankruptcy court retained jurisdiction to insure that the purpose and intent of the plan were carried out." Id. at 587. Based on these provisions, the Hillis court concluded that the estate property did not vest in the debtor upon confirmation because under the plan, the debtor "was not free to deal with its property and the world as it would have been if it had not been subject to the jurisdiction of the bankruptcy court." Id . at 589.
 
 
 13
 The provisions of Smith's reorganization plan similarly limited the vesting provisions of § 1141(b). Smith's reorganization plan provided that his creditors "will receive [payments] on account of their claims as soon as funds are available [from the sale of prints of Daybreak ] .... If, sixty (60) months after confirmation, secured creditors have not been substantially paid, Debtor will make arrangements to sell or auction the painting Daybreak." Thus, Daybreak did not vest in Smith free and clear of all intervening interests upon confirmation. Instead, Smith's creditors retained a contingent interest in the painting.
 
 
 14
 Moreover, as the district court pointed out, Smith's reorganization plan explicitly provides that the bankruptcy court "shall continue to retain exclusive jurisdiction over these proceedings until the provisions of the plan have been fully performed for the following purposes ... (6) supervising the enforcement of the plan; and (7) for such other purposes as the court shall determine." In order to supervise the enforcement of the plan, the bankruptcy court had to have the authority to enforce its provisions.[1] Thus, the bankruptcy court necessarily had jurisdiction over Smith's assets to require him to distribute the funds from proceeds of the sale of prints of Daybreak or to force Smith to sell Daybreak if he was unable to repay his creditors. Therefore, Smith "was not free to deal with [his] property and the world as [he] would have been if [he] had not been subject to the jurisdiction of the bankruptcy court." Id . at 589.
 
 
 15
 The court's broad and explicit retention of jurisdiction indicates that the plan, and thus the parties, did contemplate that the bankruptcy court would have continuing jurisdiction over Daybreak. Therefore, the bankruptcy court had jurisdiction to convert Smith's assets into a Chapter 7 liquidation.
 
 
 16
 Thus, the district court's affirmation of the bankruptcy court is AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3
 
 
 [1]
 The Hillis court recognized that "[t]he effectiveness of the bankruptcy court's continued supervision of [the debtor] and its administration of the estate for the benefit of the creditors depended on the court's being able to prevent any efforts to exercise control over the property of the estate." Id. at 590. Likewise, in this case, the bankruptcy court's ability to effectively supervise the plan for the benefit of Smith's creditors requires the court to have the authority to enforce its provisions