
**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>NTI-NV, Inc.,<br><br>　　　　　　Debtor. | BAP No. NV-22-1248-BCL<br><br>Bk. No. 22-10460-NMC |
| NTI-NV Inc.,<br>　　　　　　Appellant. | **MEMORANDUM∗** |

Appeal from the United States Bankruptcy Court
for the District of Nevada
Natalie M. Cox, Bankruptcy Judge, Presiding

Before: BRAND, CORBIT, and LAFFERTY, Bankruptcy Judges.

## INTRODUCTION

Appellant NTI-NV Inc. appeals an order converting its chapter 11 case to chapter 7[1] under § 1112(b). While the bankruptcy court's findings supporting its decision to convert rather than dismiss the case are sparse, we believe that the record supported conversion. Therefore, we AFFIRM.[2]

---

∗ This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

[2] We exercise our discretion to take judicial notice of documents electronically filed in the bankruptcy court, where appropriate. *See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

1

**FACTS**

**A.      Background of the parties**

This case is essentially a dispute between two former business partners, James Gleich and John Kindt. Gleich and Kindt were friends and business associates for 30 years.

Debtor NTI-NV, a Nevada corporation, was formed in either 2019 or 2020[3] and was a subsidiary of a larger group of entities in the transportation business in Nevada, New York, and California. NTI-NV's parent corporation, National Transportation Inc. ("NTI"), was incorporated in Nevada in 2018 by Gleich and Kindt who each held a 50% ownership interest. A 10% ownership interest in NTI was later conveyed to Booty Green, LLC, leaving Gleich and Kindt each holding a 45% interest in NTI.

NTI was the 100% owner of NTI-NV and two other subsidiaries – NTI-CA Inc. and NTI-GROUNDTRANS Inc. (collectively, the "NTI Entities").[4] NTI would collect the accounts receivables of the businesses and pay their expenses. Gleich ran the Nevada operations, while Kindt ran the Los Angeles and New York operations. Gleich and Kindt were the directors and officers of the NTI Entities. Gleich is the President and CEO of NTI-NV. Marc Jacobi is (or was) also a director of NTI-NV.

////

---

[3] The record reflected that NTI-NV was formed on either February 20, 2019, or April 17, 2020.

[4] NTI also owned a 51% interest in NTI-NY, Inc., but it was never a debtor.

## B.     The bankruptcy matters

On February 10, 2022, Gleich caused the NTI Entities to file four separate chapter 11 bankruptcy cases.

### 1.     Kindt's motion to dismiss

Kindt promptly moved to dismiss the four cases under § 1112(b), arguing that Gleich lacked authority to file them. Kindt alleged that he and Gleich had a falling out in 2021 and that Gleich had taken acts to harm Kindt's interests in the NTI Entities. For example, Gleich tried to dilute the NTI shareholders' interests by issuing a 12% interest in NTI to 7235 Investments, LLC ("7235").[5] In addition, alleged Kindt, Gleich and others had failed to account for $950,000 of a $2.5 million loan to NTI. Kindt explained that just before the bankruptcy filings, he filed actions in state court against Gleich, the NTI Entities, and others individually and derivatively regarding the alleged unlawful acts. Litigation as to the NTI Entities ceased once Gleich filed the bankruptcy cases.[6]

Ultimately, the parties agreed to dismiss the chapter 11 cases for NTI, NTI-CA, and NTI-GROUNDTRANS, but to ratify the chapter 11 filing for NTI-NV. They further agreed to unwind the 12% NTI stock transfer to 7235. As part of the settlement of Kindt's removed state court actions, the parties

---

[5] NTI-NV stated in its schedules that 7235, a Texas entity organized by Jacobi in January 2022, held 99.82% of NTI-NV's shares and that NTI held only .18%. Kindt argued that there was no explanation how 7235 acquired a 12% ownership interest in NTI, or how 7235 acquired a 99.82% ownership interest in NTI-NV when NTI was its sole owner.

[6] Kindt's state court actions were removed to the bankruptcy court and settled.

agreed that Gleich would own a 100% interest in NTI-NV; Kindt and Booty Green, LLC would own NTI, which would own NTI-CA, NTI-NY, and NTI-GROUNDTRANS.

**2.     NTI-NV's failed disclosure statements and proposed plans**

NTI-NV filed its first set of schedules six weeks after filing the petition, which was followed by some amended schedules three months later.

NTI-NV also filed various disclosure statements and proposed plans. In its second amended disclosure statement, NTI-NV explained that, prior to the bankruptcy filing, parent NTI was looking for financing, which 7235 agreed to provide in return for an equity position in NTI. Two of the three directors were in favor of the deal; Kindt was not. This is what led to Kindt's litigation in state court, which forced NTI-NV into bankruptcy. NTI-NV further explained that it was the parent of several subsidiaries which were owned by "Platinum LV", a Nevada series LLC owned by NTI-NV. So, NTI-NV owned Platinum LV, and Platinum LV owned the subsidiaries. NTI-NV proposed to fund its chapter 11 plan with cash from operations and financing from SouthStar Financial LLC.

The bankruptcy court held a hearing on NTI-NV's second amended disclosure statement and on a motion to approve financing ("November 15 hearing"). In opposition, creditor Bell Real Estate, LLC argued that NTI-NV's financial projections did not match up with its monthly operating reports and that the amounts NTI-NV claimed needed to be paid in Class 3 ($25,000)

4

did not match the amount of unsecured claims listed in its Schedule E/F ($205,031.39).

The court disapproved the second amended disclosure statement and found that NTI-NV's proposed plan was "patently unconfirmable." In short, the court found that the disclosure statement not only failed to address problems raised with prior versions, but it also created more confusion with additional, inconsistent information. The court noted that the case had been "on shaky ground from the onset" given Kindt's immediate challenge to Gleich's authority to file it, and that since Kindt's motion to dismiss and the parties' settlement, NTI-NV had "slowly and incompletely trickled information out." For example, there were discrepancies in the schedules as to what nondebtor entities NTI-NV owned. While NTI-NV claimed in its initial Schedule A/B to be the parent of several subsidiaries, in its amended Schedule A/B it disclosed a 100% ownership interest in only one entity – "Platinum LV Transportation." In the second amended disclosure statement, NTI-NV again stated that it was the parent of several subsidiaries but identified a 100% ownership interest in only a "Platinum LV" and did not identify itself as Platinum LV's parent. Therefore, opined the court, if NTI-NV's assertions were "to be believed" that it was a parent company, it was a parent of only one company, not several.

The court also questioned NTI-NV's disclosures as to how many (if any) vehicles it owned and why obligations of nondebtor entities were included in the proposed plan. NTI-NV's plan ignored corporate formalities

5

and purported to reorganize the affairs of nondebtor entities without any support for doing so. The court noted that counsel was told repeatedly at hearings on prior disclosure statements that NTI-NV's disclosures were inadequate and failed to establish that the vehicles listed in the schedules were property of the estate, or whether the court had jurisdiction to adjudicate assets and claims of nondebtor entities.

For these same reasons, the court also denied NTI-NV's financing motion. With NTI-NV's comingling of assets and liabilities and disregard for corporate formalities between itself and nondebtor entities, the court found that it remained unclear what exactly was property or liabilities of the estate. Indeed, noted the court, the loan agreement attached to the financing motion included nondebtor entities, which implied that NTI-NV was incurring debt to finance their operations. The court found that all of this information, which it "had to drag out of the debtor," raised the question of whether counsel had a conflict with and interest adverse to NTI-NV. After entering its ruling, the court said it would issue an order to show cause ("OSC") why NTI-NV's case should not be dismissed or converted to chapter 7 and why debtor's counsel should not be sanctioned.

### 3. NTI-NV's motion to dismiss

Before the bankruptcy court had issued the forthcoming OSC, NTI-NV filed its own motion to dismiss based on the substantial and continuing loss to or diminution of the estate and its inability to show a reasonable likelihood of rehabilitation. It was out of cash due to the court's denial of the

6

financing motion, but the proposed DIP lender agreed to finance NTI-NV if it got out of bankruptcy and continued operations. Thus, argued NTI-NV, dismissal was the only way to get creditors paid. NTI-NV asserted that after the chapter 11 cases for NTI, NTI-CA, and NTI-GROUNDTRANS were dismissed, Kindt drained the bank accounts, failed to pay creditors, and was now missing.

9525 Hillwood, LLC ("Hillwood"), which held a lease agreement with NTI for real property in Las Vegas, opposed NTI-NV's motion to dismiss. Hillwood argued that it had an administrative claim for rent based on NTI's improper sublease of the property to NTI-NV. Hillwood had obtained relief from stay earlier in the case to evict NTI-NV. Hillwood argued that the case should not be dismissed because NTI-NV might engage in concealment or transfers of assets to thwart creditors' collection efforts if dismissal were granted. Hillwood's concerns about asset transfers were based on statements NTI-NV made in response to an earlier motion filed by Kindt. Hillwood additionally argued that any existing preference or avoidance actions against NTI-NV's former or current principal(s) would disappear if the case were dismissed. Thus, conversion was in the best interest of creditors and the estate.

### 4.    OSC to dismiss or convert the case

The bankruptcy court then issued an OSC for why NTI-NV's case should not be dismissed or converted to chapter 7 under § 1112(b). The OSC was based on the findings the court made at the November 15 hearing.

In response, NTI-NV argued that dismissal was in the best interest of creditors. If the case was converted to chapter 7, argued NTI-NV, there would be no money for unsecured creditors; secured creditors and administrative fees would consume all of its assets. The estate's outstanding secured debt was close to the value of the vehicles NTI-NV owned, so shutting down the business and selling the vehicles at auction would result in nothing for unsecured creditors. In addition, argued NTI-NV, its operating certificates had value that would be lost if the business closed. Thus, it was in the best interest of creditors that NTI-NV continued to operate outside of bankruptcy and generate revenue to pay its debts. NTI-NV further argued that no preference or avoidance actions were warranted against Gleich in regards to NTI-NV or NTI. Moreover, while Kindt had taken cash from NTI and disappeared, leaving creditors with uncollectible default judgments against him, NTI-NV asserted that there were no assets for a chapter 7 trustee to pursue.

At the hearing on the OSC, Hillwood argued in favor of conversion so that a chapter 7 trustee could investigate the estate's assets and any potential claims for recovery against former and current principals and insiders of NTI-NV. Hillwood's counsel further noted that, although NTI-NV claimed to have low overhead and was generating a monthly profit, NTI-NV had not paid Hillwood anything for use of its property since the bankruptcy filing in February 2022. Thus, it was questionable whether creditors would be paid by NTI-NV following dismissal.

After hearing argument from the parties, the bankruptcy court entered its oral ruling converting the case to chapter 7. The court found that cause existed to dismiss or convert for the reasons stated at the November 15 hearing, in NTI-NV's motion to dismiss, and Hillwood's opposition to that motion, which the court considered a response to the OSC. The court then found that it was in the best interest of creditors to convert the case to chapter 7 so that a "true fiduciary" could review the case and determine whether any claims could be pursued against Kindt or others. This timely appeal followed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Did the bankruptcy court abuse its discretion in converting NTI-NV's chapter 11 case to chapter 7?

## STANDARDS OF REVIEW

The bankruptcy court's decision to convert a chapter 11 case to chapter 7 is reviewed for an abuse of discretion. *Pioneer Liquidating Corp. v. U.S. Tr. (In re Consol. Pioneer Mortg. Entities)*, 264 F.3d 803, 806 (9th Cir. 2001); *Johnston v. JEM Dev. Co. (In re Johnston)*, 149 B.R. 158, 160 (9th Cir. BAP 1992). "We will reverse the bankruptcy court only if its decision was based on an erroneous conclusion of law or when the record contains no evidence on which the bankruptcy court rationally could have based its decision." *Baroni*

9

*v. Seror (In re Baroni)*, 36 F.4th 958, 965 (9th Cir.) (cleaned up) (converting chapter 11 case to chapter 7 under § 1112(b)), *cert. denied sub nom.*, 143 S. Ct. 424 (2022).

DISCUSSION

**A.     The bankruptcy court did not abuse its discretion in converting NTI-NV's chapter 11 case to chapter 7.**

**1.     Legal standards under § 1112(b)**

The statutory authority for conversion of a chapter 11 case is found in § 1112(b), which provides that the bankruptcy court shall convert or dismiss a case, whichever is in the best interests of creditors and the estate, for cause. § 1112(b)(1). The bankruptcy court may sua sponte dismiss or convert a case under § 1112(b). *See Leeward Subdivision Partners, LLC v. GDR Lending, LLC (In re Leeward Subdivision Partners, LLC)*, BAP No. WW-10-1060-HRuJu, 2010 WL 6259983, at *6 (9th Cir. BAP June 11, 2010) (citing cases)).

Section 1112(b)(4) sets forth a nonexclusive list that establishes "cause" to convert or dismiss, but the bankruptcy court can consider other factors, and it has broad discretion in determining what constitutes cause adequate for conversion under § 1112(b). *First Found. Bank v. Pourteymour (In re Pourteymour)*, BAP Nos. SC-22-1008-GFB, SC-22-1009-GFB & SC-22-1010-GFB, 2023 WL 2929323, at *5 (9th Cir. BAP Apr. 12, 2023) (citing *Sullivan v. Harnisch (In re Sullivan)*, 522 B.R. 604, 614 (9th Cir. BAP 2014)).

Once the bankruptcy court has determined that cause exists, it must convert or dismiss the case, whichever is in the best interest of creditors and

the estate, unless the court "specifically identifies unusual circumstances" establishing that such relief is not in the best interest of creditors and the estate. § 1112(b)(1); *see also In re Sullivan*, 522 B.R. at 612.

### 2. Analysis

The bankruptcy court found that "cause" existed under § 1112(b)(1). It did not articulate which paragraph under subsection (b)(4) supported cause, but the record supports a finding of cause under § 1112(b)(4)(A): there was (1) a substantial or continuing loss to or diminution of the estate, and (2) an absence of a reasonable likelihood of rehabilitation. NTI-NV conceded as much in its own motion to dismiss. NTI-NV argued that it lacked postpetition financing to maintain operations due to the court's denial of the financing motion, and its operating reports for the months of April 2022 through September 2022 indicated there was a continuing loss to the estate.

NTI-NV was also unable to propose an approvable disclosure statement or confirmable plan, which the court found at the November 15 hearing. In disapproving the second amended disclosure statement and proposed plan as "patently unconfirmable," the court found that NTI-NV's schedules, disclosure statements, and proposed plans contained inconsistent information and created only more confusion with each amended version. It was not clear what vehicles were property of the estate or property of nondebtor entities and what liabilities were NTI-NV's or the nondebtor entities'. It appeared that NTI-NV's proposed plan was trying to reorganize

11

and address debts for nondebtor entities, which may or may not have owned the vehicles.

In further support of cause, the court found that there was a lack of candor and transparency by NTI-NV throughout the case. NTI-NV was not fully disclosing assets and liabilities, it was seemingly commingling assets with nondebtor entities, it was failing to observe corporate formalities, and, based on its own statements, there were possible avoidance actions against Kindt. A paramount requirement of bankruptcy, and particularly as to a chapter 11 debtor in possession, is disclosure and transparency. *See In re Dr. R.C. Samanta Roy Inst. of Sci. Tech. Inc.*, 465 F. App'x 93, 97 (3d Cir. 2011) (lack of candor to the court can establish cause to dismiss or convert under § 1112(b)(4)(H) as "failure timely to provide information"); *Cal. Palms Addiction, Recovery Campus, Inc. v. Vara*, No. 4:22-CV-0812, 2023 WL 2664284, at *6 (N.D. Ohio Mar. 27, 2023) (commingling of estate and non-estate assets can establish cause to dismiss or convert under § 1112(b)(4)(B) as "gross mismanagement of the estate").

After finding that cause existed under § 1112(b)(1) and that there were no unusual circumstances under § 1112(b)(2), the bankruptcy court determined that conversion was in the best interest of creditors and the estate. The court believed that converting the case to chapter 7 provided the best possibility of recovery for unsecured creditors. A "true fiduciary" could determine the extent of NTI-NV's assets, which was still unclear, and investigate any potential claims for recovery against Kindt or other insiders.

12

NTI-NV contends there was no evidence to support the bankruptcy court's decision to convert the case. NTI-NV argues that the court based its decision upon two unsupported facts: (1) the disapproval of the second amended disclosure statement, which NTI-NV disputes; and (2) speculative fraudulent transfer claims that may not be collectible.

Specifically, NTI-NV takes issue with certain factual findings the court made with respect to the second amended disclosure statement, which NTI-NV contends shaded the court's view and caused it to incorrectly rule that conversion, as opposed to dismissal, was in the best interest of creditors and the estate. First, NTI-NV argues that there was no evidence to support the court's finding that the case was "on shaky ground" from the start. NTI-NV argues that Kindt's motion to dismiss was unfounded and that NTI-NV demonstrated by clear and convincing evidence that Gleich had authority to file the bankruptcy cases for the NTI Entities. But there was evidence in the record to support the court's finding that NTI-NV's case was on shaky ground from the start. Upon Kindt's immediate challenge to Gleich's authority to file the cases, which was supported by a declaration and documentary evidence, Gleich agreed to dismiss the cases for NTI and NTI-GROUNDTRANS. Ultimately, the parties agreed to dismiss all cases but NTI-NV's.

NTI-NV next takes issue with the court's statement that NTI-NV had "slowly and incompletely trickled information out," and argues that requesting an extension of time to file its schedules did not mean that

13

information was being withheld. The court did not say that the request for an extension of time to file schedules was the basis for its statement. Rather, the court was concerned about discrepancies between the original and amended schedules and the various disclosure statements and proposed plans regarding the corporate structure, what vehicles and entities were owned by NTI-NV, and which obligations were NTI-NV's. Rather than getting clarity on this information, which the court said it had to "drag out" of NTI-NV, the information only became more confusing.

NTI-NV next disputes the court's comment that it was still unclear if the vehicles were property of the estate when the court had recently ruled in a turnover motion that they were not. The turnover order upon which NTI-NV's relies for its argument contains no such finding. The court made its findings with respect to the vehicles in an oral ruling. NTI-NV did not include a transcript of the hearing in the record on appeal. We, as a result, cannot determine whether the court clearly erred as to this finding. Even if it did, other factors supported its finding of cause.

NTI-NV also disputes the court's finding that there was a lack of transparency. NTI-NV argues that the problem may be that too much information was provided. The court did not see it that way, and the record supports its finding. Based on the ever-changing story from NTI-NV regarding its corporate structure, what assets/liabilities it had, and what assets/liabilities belonged to nondebtor entities, it was not illogical for the court to find a lack of transparency throughout the life of the case. Whether

14

there was a lack of transparency on NTI-NV's part or it was simply ignorant of fundamental corporate management principles is immaterial; either of those findings supports cause.

Along this same line, NTI-NV argues that the second amended disclosure statement had adequate information and the court's position to the contrary was unsupported. The bankruptcy court has broad discretion in determining what is adequate information in a disclosure statement under § 1125(a)(1). *Computer Task Grp., Inc. v. Brotby (In re Brotby)*, 303 B.R. 177, 193 (9th Cir. BAP 2003). The court found that the second amended disclosure statement suffered from several infirmities: (1) it failed to remedy issues with prior versions and created only more confusion; (2) it was still not clear what vehicles were property of the estate or property of nondebtor entities and what NTI-NV's liabilities were; and (3) NTI-NV was trying to reorganize and address debts for nondebtor entities without any authority to do so. Contrary to NTI-NV's argument, the court's finding that the second amended disclosure statement did not contain adequate information was supported by the record.

Finally, NTI-NV argues that no evidence supports the court's finding that Kindt absconded with NTI-NV's funds or that the supposed funds might be recoverable. Rather, argues NTI-NV, Kindt took funds from NTI and such funds would not be recoverable, particularly given the court-approved settlement between the parties. Further, argues NTI-NV, there was no evidence, nor claim or proof of any cause of action against Gleich

15

and the current management. While NTI-NV asserted that Kindt took money from only NTI and not NTI-NV, and Kindt was no longer part of NTI-NV, he was an insider of NTI-NV prepetition and it is plausible that preference or avoidance claims could exist against him or other insiders of NTI-NV given how the companies operated and the accusations made by NTI-NV and its creditors in other filings. Moreover, according to the settlement, the only party released from any claims was 7235; no other releases were exchanged between the parties. Thus, there was evidence to support the court's finding that conversion was in the best interest of creditors and the estate so that a chapter 7 trustee could investigate any potential claims for recovery against Kindt or other insiders.

NTI-NV has not identified any legal error by the bankruptcy court and, taken individually, any of these disputed findings if clearly erroneous would not constitute reversible error. The record supports the bankruptcy court's finding that the interests of NTI-NV's creditors and its estate were best served by conversion.[7]

## CONCLUSION

For the reasons stated above, we AFFIRM.

---

[7] The bankruptcy court did not discuss the option of appointing a chapter 11 trustee. *See* § 1112(b)(1). However, since there was no reorganization in prospect to pursue, appointing a chapter 11 trustee was not a feasible option.