## In re CANAL STREET LIMITED PARTNERSHIP, Debtor.

### No. BKY 96–30061.

United States Bankruptcy Court, D. Minnesota, Third Division.

March 21, 2001.

Steven D. Deruyter, Larry M. Wertheim, Patrick B. Hennessy, Richard D. Salmen, William J. Fisher, Kelly E. Keady, Garrett M. Vail, Frank R. Berman, Minneapolis, MN, for Debtor.

## ORDER DENYING APPLICATION OF ROSS DWORSKY FOR ORDER REOPENING CHAPTER 11 CASE

GREGORY F. KISHEL, Chief Judge.

This Chapter 11 case comes on before the Court in chambers on the application of one Ross Dworsky, for an order reopening this case pursuant to 11 U.S.C. § 350(b) and Loc. R. Bankr. P. (D.Minn.) 5010–1. In his application, Dworsky alleges that he "owns approximately 50 percent of the revenue bonds of the Debtor, having purchased the bonds from creditors named in this 1996 Chapter 11 Case." The Debtor owns a parcel of real estate in Minneapolis commonly known as the Crown Roller Mill Building, which was renovated from its original use to office space. The Debtor obtained confirmation of a plan of reorganization in this case on May 8, 1996. Under paragraph 5.3 of the plan, it was to make distribution to the holders of its revenue bonds from the part of its future cash flow that exceeded certain specified expenses and costs of operation. Dworsky alleges that the Debtor has defaulted in these payments. He seeks to reopen the case in order to bring a motion to convert this case to one under Chapter 7.

■ The decision on an application to reopen a bankruptcy case is committed to the Court's discretion. *Arleaux v. Arleaux*, 210 B.R. 148, 149 (8th Cir. BAP 1997). Cases may be reopened "to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b). Where the stated purpose of reopening is the proposed commencement of judicial proceedings, the applicant must show that the proceedings have merit. Where the

sought-for relief is not available, there is no cause for reopening. *Id.* at 150.

■ This case was closed by an Order and Final Decree entered on August 13, 1996, nearly five years ago. The Debtor had obtained confirmation of a plan of reorganization. The plan constituted a new set of binding contractual commitments to creditors and other parties in interest. *In re Harstad,* 155 B.R. 500, 510 (Bankr.D.Minn.1993), *aff'd,* 39 F.3d 898 (8th Cir.1994); *In re Ernst,* 45 B.R. 700, 702 (Bankr.D.Minn.1985). *See also In re Arctic Ents., Inc.,* 68 B.R. 71, 80 (D.Minn. 1986) ("In a chapter 11 case, ... the debtor and creditors naturally look to the plan of reorganization as the final decree of the rights of the parties ..."); *In re Emmer Bros. Co.,* 52 B.R. 385, 390 (D.Minn.1985) (order confirming Chapter 11 plan has same legal effect as federal court judgment; upon confirmation, plan is binding on debtor and all creditors); *In re Consumers Realty & Dev. Co., Inc.,* 238 B.R. 418, 425 (8th Cir. BAP 1999) (provisions of confirmed plan prevail over contrary provisions of otherwise-applicable nonbankruptcy law).

The Debtor's plan preserved certain pre-existing rights, duties, and remedies running between the Debtor and the members of the class of bondholders. *See* ¶ 5.3, Debtor's Second Amended Plan of Reorganization (filed as Document No. 91–1).[1] The terms clearly contemplated that, on a default by the Debtor, bondholders' interests could be advanced via foreclosure of the mortgage that secured the original bond issue. *Id.* at ¶ 5 3.h. The plan thus fixed the post-confirmation rights of parties such Dworsky, as part of the more generalized constituency of a class.

■ In the ordinary course of reorganization under the Bankruptcy Code, "confirmation of plan vests all of the property of the [bankruptcy] estate in the debtor." 11 U.S.C. § 1141(b). The Debtor's confirmed plan contained no language to override this, though the prefatory language of § 1141(b) would have allowed that. Because it did not, all of the assets of the Debtor's estate under Chapter 11 revested in the Debtor on confirmation in May, 1996. *In re K & M Printing, Inc.,* 210 B.R. 583, 584 (Bankr.D.Ariz.1997); *In re BNW, Inc.,* 201 B.R. 838, 849 (Bankr. S.D.Ala.1996); *In re Winom Tool and Die, Inc.,* 173 B.R. 613, 614–15 (Bankr. E.D.Mich.1994). Post-confirmation conversion of the case would not have brought those assets into an estate under Chapter 7. *In re Troutman Ents., Inc.,* 253 B.R. 8, 13 (6th Cir. BAP 2000). Therefore, there would be no assets for a trustee under Chapter 7 to administer, were this case converted. "Liquidation," the result sought by Dworsky, presumably as to the Crown Roller Mill Building, could not occur. Creditors' interests would not and could not be served by converting the case. *In re K & M Printing, Inc.,* 210 B.R. at 585–86.

Effective judicial relief would not be available to Dworsky were this case reopened. *See Arleaux v. Arleaux,* 210 B.R. at 150.[2] As a result,

---

1. Those pre-existing rights and duties had been fixed by the plan confirmed on October 8, 1991, in the Debtor's prior Chapter 11 case.

2. Dworsky's counsel advances a broad-brushed theory that post-confirmation conversion should always be ordered on a debtor's default, merely because 11 U.S.C.

§§ 1112(b)(7)-(8) contemplate post-confirmation conversion without language of limitation by time or event. There are good reasons for rejecting such an open-ended approach. For one, conversion at that point raises a large number of complex legal issues for the unfortunate trustee assigned the task of administration, beyond

IT IS ORDERED that the application of Ross Dworsky for an order reopening this case is denied.

the unsavory prospect of not having assets to administer. *See David A. Lander and Robert D. Martin,* "Post–Confirmation Conversion from Chapter 11 to Chapter 7 Rarely Makes Sense," 1994 *Norton Bankr. Law Adviser,* no. 9, at 10–13 (September, 1994). Too, when a plan establishes or preserves a fairly complex regime of rights, duties, and remedies, the "reorganization," as such, is largely complete on confirmation. Overseeing that process is the Bankruptcy Court's only essential function in a Chapter 11 case. The debtor's legal business in the Bankruptcy Court is certainly done once it is positioned for full performance under the plan after substantially consummating it, 11 U.S.C. § 1101(2), and after obtaining final resolutions on post-confirmation fee applications, claim objections, and avoidance actions. An alleged default nearly five years after confirmation and the closing of the case has virtually nothing to do with all of that. And, in the last instance, the Bankruptcy Court does not have exclusive jurisdiction over issues stemming from a post-confirmation default. *In re Ernst,* 45 B.R. at 702–03. The call for exercising concurrent jurisdiction is increasingly tenuous as time passes after confirmation. The bondholders, including Dworsky, have a remedy at law already. There is just no call for the Bankruptcy Court to reassume power over them or the Debtor at this late date.