**In re Nesbit Lee LACY, a/k/a Lee Lacy, Debtor.**

**Nesbit Lee Lacy, Appellant,**

v.

**Stinky Love, Inc., Appellee.**

**No. CIV.A.03–M–1681(MJW).**

**Bankruptcy No. 00–23048–SBB.**

United States District Court, D. Colorado.

Jan. 21, 2004.

Lee M. Kutner, Kutner, Miller, Kearns, PC, Denver, CO, for Appellant.

Gregory L. Williams, Block, Markus and Williams, LLC, Denver, CO, Lawrence C. Hinkle, II, Alschuler, Grossman, Stein & Kahan, LLP, Santa Monica, CA, for Appellee.

## MEMORANDUM OPINION AND ORDER

MATSCH, Senior District Judge.

Nesbit Lee Lacy ("Lacy" or "Debtor") appeals the August 21, 2003 order of the Bankruptcy Judge, converting the Debtor's bankruptcy proceeding from Chapter 11 to Chapter 7 pursuant to 11 U.S.C. § 1112(b). This court has appellate jurisdiction pursuant to 28 U.S.C. § 158(a). Because the Bankruptcy Judge erroneously concluded that the assets that were expressly vested in the Debtor in the confirmed Plan of Reorganization would become assets of the bankruptcy estate to be liquidated by the Chapter 7 Trustee, the order is reversed and the matter is remanded for reconsideration.

The First Amended Plan of Reorganization Dated June 5, 2001("Plan") described the Debtor as a resident of Aspen, Colorado, doing business from an office in Los Angeles, California. Lacy said that his business interests were primarily in the motion picture industry, real estate investment and management and art investment. The Plan was submitted with the Third Amended Disclosure Statement, approved by the court on August 10, 2001. The Plan was confirmed on September 17, 2001. The appellant, Stinky Love, Inc. ("SLI") accepted the Plan. The Final Decree was entered on June 26, 2002. Upon SLI's motion the Bankruptcy Judge ordered the proceedings re-opened under 11 U.S.C. § 350 and the Debtor testified upon examination by counsel for SLI pursuant to Fed.

R. Bankr.P.2004. SLI then moved under 11 U.S.C. § 1112(b) to convert the case to a Chapter 7 liquidation proceeding, alleging failure to comply with the Plan and dissipation of assets which the Debtor promised to be used to raise the money necessary for payment of creditors under the Plan. That motion was heard on June 4, 2003. The Debtor did not attend and his counsel did not offer any evidence.

Relying on the transcript of the Debtor's testimony at the Rule 2004 examination and documents submitted by SLI, the Bankruptcy Judge made findings of fact to support the conclusion that there was cause for conversion under 11 U.S.C. § 1112(b)(2), (3) and (7) because the Debtor has "(1) been unable to effectuate—carry out—his Plan and (2) unreasonably delayed his creditors—in particular, SLI." In response to the legal argument that conversion would be pointless because there would be no property for the Chapter 7 trustee to administer, the Bankruptcy Judge ruled that this was a "liquidating plan" requiring the Debtor to liquidate the assets and hold the proceeds for the benefit of creditors. Accordingly, the "reorganized debtor" was said to hold the property "subject to the plan and for the benefit of creditors, who retain a contingent or equitable interest therein." The court gave as additional justification for conversion that under 11 U.S.C. § 1142(b) the court is empowered to direct the debtor to effect a transfer of property dealt with by a confirmed plan that is necessary for the consummation of the plan and that SLI was seeking to transfer the Plan property "to the Chapter 7 estate in order that the Plan may be carried out."

In this appeal, the Debtor has challenged the evidentiary support for the factual findings relied upon in the ruling, claiming errors in the admission of the evidence. It is not necessary to determine those issues because the order was based on legal errors in construing the provisions of the Plan, the effect of the Order confirming the Plan and entry of the Final Decree, and the differences between the jurisdiction of the Bankruptcy Court under Chapters 7 and 11 of the Bankruptcy Code.

In the subject Memorandum Opinion and Order, the Bankruptcy Judge reviewed the record of the pleadings before and after confirmation as being the chronicles of a "two-party" war between the Debtor and SLI. That characterization affected the analysis and result which placed undue emphasis on the perceived need to provide a remedy for the creditor's claims of injustice and unfairness. Those claims cannot justify a distortion of the Bankruptcy Code with consequences affecting the integrity of Chapter 11 proceedings and the interests of others relying on the results of the court's earlier orders.

The background of the dispute between these parties is a failed movie production. SLI, formed by the producers of the movie "Love Stinks," had a contract with Independent Artists Company, LLC ("IAC"), a company owned by Lacy, for payment by IAC of $5,000,000 of the movie's marketing budget. The payment was not made and the revenues from the movie were less than the costs and expenses. After SLI received an arbitration award against IAC, SLI sought payment from Lacy, individually, in an action in a California state court which was pending when Lacy filed his Chapter 11 petition on November 1, 2000. The Bankruptcy Judge granted relief from the stay of that action, and on September 16, 2002, judgment entered in the Superior Court, Los Angeles County, requiring Lacy to pay SLI $5,735,685. Lacy filed a timely appeal and no supersedeas bond was required because Lacy's assets were in this Chapter 11 proceeding, the Final

Decree having been entered on June 26, 2002. Because the appeal is pending in an intermediate appellate court in California, SLI holds a disputed claim under the terms of the Plan.

The Debtor's Disclosure Statement and bankruptcy schedules listed equities in real estate, including 12.5 acres of undeveloped land in Brentwood, California (the "Sullivan Canyon Property"), a commercial office building in Los Angeles ("Melrose Place"), and ownership of Tagert Lakes Holdings, LLC, the owner of 117 acres of undeveloped land near Aspen, Colorado (the "Tagert Lakes Property"). The Debtor also listed an art collection of considerable value.

The Plan provided for full payment of the claims of unsecured creditors. Class 7(a) creditors with allowed unsecured claims of $1,000 or less were paid as the Plan provided. Creditors with allowed claims greater than $1,000 were to be paid in full, with interest, within two years after the effective date of the Plan. The means for implementing the Plan were the sales of one parcel of the Taggert (sic) Lakes Ranch property, all or part of the Sullivan Canyon Property and liquidation of the art collection to the extent necessary to obtain the necessary funds for the payment of unsecured claims. (Plan ¶ 9.1). The Debtor agreed to attempt to refinance the Sullivan Canyon property within 6 months following the effective date and to improve it to enable division into two parcels.

The Disclosure Statement showed a liquidation value for the Tagert Lakes Property of $18 million, with net equity of approximately $7 million after payment of existing liens ($6.9 million), taxes, and costs of sale. (Ex. A to the Disclosure Statement). The Plan required the Debtor to sell at least one parcel of the Tagert Lakes Property within the first year fol-

lowing the effective date of the Plan. (Plan ¶ 9.1).

The Disclosure Statement showed a liquidation value for Sullivan Canyon Property of $7 million, with net equity of $3.3 million after payment of existing liens ($1.6 million), taxes, and costs of sale. The fine art and primitive collection was valued at $1.5 million.

The Plan restricted the Debtor's ability to transfer or encumber property, except within the ordinary course of business and in the event of a refinancing any resulting lien could not exceed 125% of the lien being extinguished. (Plan ¶ 9.8). Paragraph 9.7 of the Plan contained the following default provision:

> In the event that either a parcel of real property or the fine art and primitive collection is to be sold by a particular date and a sale is not completed by such date, an auction of the property shall be conducted pursuant to this paragraph, to the extent necessary to pay Class 7 claimants. The auction will be conducted within sixty (60) days of the last date by which the particular property was to be sold as set forth in paragraph 9.1. Advance notice of the time and place of the auction shall be provided to each secured creditor who holds a security interest in the property to be sold and to all remaining Class 7 creditors. The auction sale shall be conducted by a licensed, experienced firm with expertise in auction sales of the type of property proposed for sale. The unsecured creditors shall be provided with forty-five (45) days advance notice of the selection of an auctioneer. If a creditor does not approve of the auctioneer, they shall inform the Debtor and the parties shall use reasonable efforts to select an acceptable auctioneer. If the parties can not agree on an auctioneer, the creditor may apply to a court of competent juris-

diction and request that the court approve or select an appropriate auctioneer.

SLI's claim against the Debtor is classified as a disputed claim in Class 7(b). Paragraph 9.3 of the Plan provides that:

Distributions to any class of creditor will only be made on account of Allowed Claims. In the event that distributions are made at a time that a claim objection is pending before the Court or a judgment has entered to establish a claim and the judgment is on appeal or subject to a certiorari proceeding, the portion of the distribution that would be paid to the disputed claimant will be held by Lacy in an interest bearing Bank account or sufficient assets will be retained by Lacy until the claim is allowed or disallowed. If allowed, the claim will be paid in full with interest. If disallowed, no payment will be made. Disputed claimants who hold claims that become allowed after the effective date of the Plan shall be paid within [two years]. If the disputed claim is allowed after such time period, the claim shall be paid within sixty (60) days of allowance.

The Bankruptcy Judge found that the Debtor had refinanced Melrose Place in excess of the Plan's 125% limitation; the Debtor had delayed in refinancing the Sullivan Canyon Property and then obtained a new loan carrying a high rate of interest which was eroding the equity in that property; that existing secured debt had not been serviced in a timely manner, decreasing the Debtor's equity, and that the Debtor had sold the Tagert Lakes Property for $13 million, diverting proceeds from the sale to pay creditors with unscheduled debts, including payments to business associates, insiders, and entities controlled by the Debtor. The Bankruptcy Judge also found that the Debtor had not made adequate arrangements for the Sullivan Canyon Property.

The hearing was held on June 4, 2003. At the time of the hearing, the Debtor had paid all unsecured creditors with allowed claims with the exception of two, the primary unpaid claim being that of Fotokem. Fotokem joined in the Debtor's objection to conversion.

■ The Bankruptcy Court's legal conclusions are subject to *de novo* review. *In re RFI Transport, Inc.*, 122 B.R. 124, 126 (D.Colo.1990). Findings of fact are not to be set aside unless clearly erroneous. Fed. R. Bankr.P. 8013.

■ "The decision to convert is reviewed for an abuse of discretion. A bankruptcy court abuses its discretion if it bases its ruling upon an erroneous view of the law or a clearly erroneous assessment of the evidence." *Pioneer Liquidating Corp. v. United States Trustee (In re Consol. Pioneer Mortgage Entities)*, 248 B.R. 368, 375 (9th Cir. BAP 2000), *aff'd*, 264 F.3d 803 (9th Cir.2001) (internal citations omitted).

■ Section 1141(a) of the Bankruptcy Code provides that a confirmed Chapter 11 plan binds the debtor, any entity issuing securities under the plan, any entity acquiring property under the plan, as well as any creditor, equity security holder, or general partner in the debtor, whether or not the claim or interest was impaired under the plan or the holder accepted the plan. "Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor." § 1141(b).[1] Confirmation generally discharges the debtor from its pre-confirmation debt and substitutes the obligations of

---

1. References are to 11 U.S.C. unless otherwise noted.

the plan for the debtor's prior indebtedness. *See* § 1141(c), (d). "The plan is essentially a new and binding contract, sanctioned by the Court, between a debtor and his preconfirmation creditors." *In re Ernst,* 45 B.R. 700, 702 (Bankr.D.Minn. 1985).

■ After confirmation, the Bankruptcy Court retains jurisdiction to interpret, enforce, or aid the operation of a plan of reorganization. *Donaldson v. Bernstein (In re Donaldson),* 104 F.3d 547 (3d Cir. 1997); *In re Erie Hilton Joint Venture,* 137 B.R. 165 (Bankr.W.D.Pa.1992), *see also* 1991 Advisory Committee Note to Fed.R.Bank.P. 3022. ("A final decree closing the case after the estate is fully administered does not deprive the court of jurisdiction to enforce or interpret its own orders and does not prevent the court from reopening the case for cause pursuant to § 350(b) of the Code.") Section 1112(b) provides express authority for dismissal or conversion of a Chapter 11 case, including post-confirmation conversion. Other post-confirmation enforcement provisions are found in § 1127(b) (authorizing modification of a confirmed plan); § 1144 (authorizing revocation within 180 days after confirmation of a plan confirmed on the basis of fraud); and § 1142 (requiring the debtor to carry out the plan and authorizing the bankruptcy court, after confirmation, to order the performance of any act necessary to effect consummation of the plan).

The Debtor's Plan expressly provided for retention of jurisdiction by the Bankruptcy Court. The Bankruptcy Court had jurisdiction under 28 U.S.C. § 1334 and 28 U.S.C. § 157 and authority under 11 U.S.C. § 1112 to consider SLI's post-confirmation motion to convert to Chapter 7.

Section 1112(b) of the Code provides that on request of a party in interest, the court may convert a case under chapter 11 to a case under chapter 7 or may dismiss a case under chapter 11, whichever is in the best interest of creditors and the estate, for cause, including:

(1) continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation;

(2) inability to effectuate a plan;

(3) unreasonable delay by the debtor that is prejudicial to creditors;

\* \* \* \* \* \*

(7) inability to effectuate substantial consummation of a confirmed plan;

(8) material default by the debtor with respect to a confirmed plan;

■ The Code distinguishes between property of the estate and property of the debtor. Property of the estate is defined in § 541(a) which states that commencement of a case creates an estate comprised generally of "all legal or equitable interests of the debtor in property as of the commencement of the case." The commencement of a converted case relates back to the date of the original petition:

Conversion of a case from a case under one chapter of this title to a case under another chapter of this title constitutes an order for relief under the chapter to which the case is converted, but ... does not effect a change in the date of the filing of the petition, the commencement of the case, or the order for relief.

§ 348(a). In a Chapter 11 case, property of the estate vests in the debtor upon confirmation, unless otherwise provided in the plan or order of confirmation. § 1141(b).

Some courts have held that post-confirmation conversion is futile, reasoning that after confirmation no estate property remains to be administered by a Chapter 7 trustee. In *In re Canal Street Ltd. P'ship,* 260 B.R. 460, 462 (Bankr.D.Minn.2001), the court held that the debtor's post-confirma-

tion default on payments to a bondholder was not cause for conversion where the bondholder had an adequate remedy under the plan—foreclosure of the mortgage securing the original bond issue—and a Chapter 7 trustee would succeed to no assets because property of the estate had vested in the debtor upon confirmation. 260 B.R. at 462. Where a confirmed plan of reorganization has failed, courts also have ordered dismissal, rather than conversion, on the ground that conversion would be futile where no estate assets remained to be administered after confirmation. *See In re K & M Printing, Inc.*, 210 B.R. 583 (Bankr.D.Ariz.1997); *In re T.S.P. Indus., Inc.*, 117 B.R. 375 (Bankr. N.D.Ill.1990); *see also In re T.S. Note Co.*, 140 B.R. 812 (Bankr.D.Kan.1992) (granting motion to convert but clarifying that property of the Chapter 7 estate consisted only of the non-administered assets remaining in the debtors' pre-confirmation estate, such as possible causes of action).

Other courts have concluded that upon conversion, the property of the debtor revests in the Chapter 7 estate upon conversion. The rationale of these decisions is that a contrary result would render meaningless the express authorization of post-confirmation conversion found in § 1112(b). *See Smith v. Lee (In re Smith)*, 201 B.R. 267, 273 (D.Nev.1996), *aff'd, mem.*, 141 F.3d 1179 (9th Cir.1998); *Carey v. Flintridge Lumber Sales, Inc. (In re RJW Lumber Co.)*, 262 B.R. 91, 93 (Bankr.N.D.Cal.2001); *In re Calania Corp.*, 188 B.R. 41, 43 (Bankr.M.D.Fla. 1995); *Bezner v. United Jersey Bank (In re Midway, Inc.)*, 166 B.R. 585, 590 (Bankr.D.N.J.1994).

Here the Bankruptcy Judge steered a course between these competing views by construing the Plan to mean that assets vested in the Debtor upon confirmation, but they were, in essence, held in trust for the benefit of creditors.

SLI argues that support for this approach is found in the case of *Pioneer Liquidating Corp. v. United States Trustee (In re Consol. Pioneer Mortgage Entities)*, 248 B.R. 368 (9th Cir. BAP 2000), *aff'd*, 264 F.3d 803 (9th Cir.2001). There six corporations sought Chapter 11 bankruptcy relief, and the cases were consolidated under the name Consolidated Pioneer Mortgage Entities. "Pioneer Liquidating Corporation" or "PLC" was formed to take title to the assets of all six estates, liquidate them, resolve claims, and pay the claims of creditors and investors. After the ongoing liquidation failed to produce adequate proceeds and PLC refused to make an accounting, the Bankruptcy Court ordered the case converted to Chapter 7, six years after confirmation. Finding that PLC acted as a "liquidating trust" with fiduciary duties to the creditors, the Bankruptcy Court held that PLC breached its fiduciary duties by failing to provide financial information and that its failure constituted unreasonable delay giving rise to cause for conversion under § 1112(b)(3). The Bankruptcy Appellate Panel for the Ninth Circuit affirmed. 248 B.R. at 378. The United States Court of Appeals for the Ninth Circuit affirmed the decision of the Bankruptcy Appellate Panel, holding that § 1141(b) did not prevent conversion of the case to one under Chapter 7. 264 F.3d at 807–08. The Ninth Circuit Court of Appeals held that the "language and purpose" of the plan demonstrated that the assets which had vested in PLC upon confirmation revested in the estate upon conversion of the case to one under Chapter 7. *Id.* at 807.

 The facts of this case are very different from those in *Consol. Pioneer Mort-*

*gage Entities.* There title to all estate assets vested in PLC, and the original debtors were dissolved. PLC was an entity formed for the exclusive benefit of the creditors. The order of confirmation provided that PLC would exercise its powers on behalf of the investor/creditors and hold money in trust for certain creditors until distribution. Those who failed to provide the accounting of PLC's liquidation activities were directors of the corporation, with fiduciary duties arising from that position. In contrast, no trust or fiduciary relationship was created under the Debtor's Plan in this case. "In a typical reorganization case, once a plan is confirmed, a reorganized debtor no longer owes a fiduciary duty to the estate because the estate ceases to exist." *Consol. Pioneer Mortgage Entities,* 248 B.R. at 376, *citing In re T.S.P. Indus., Inc.,* 117 B.R. at 377.

*Hillis Motors, Inc. v. Hawaii Auto. Dealers' Ass'n,* 997 F.2d 581 (9th Cir.1993) is also inapposite. In *Hillis,* the Ninth Circuit Court of Appeals held that certain property of a Chapter 11 estate did not fully vest in the debtor upon confirmation but remained subject to the automatic stay. The court described the plan, which maintained control of the debtor's business in the hands of a bankruptcy trustee after confirmation, as "textually ambiguous" on the question of whether the property of the estate revested in the debtor upon confirmation. *Id.* at 590.

■ There is no ambiguity in the language of this Plan. Paragraph 11.1 states, "On the Effective Date of the Plan, all property of the estate will vest in Lacy free and clear of all liens except those specifically set forth in the Plan." Similarly, Paragraph 10 of the Order Confirming the Plan provides, "That in accordance with Code § 1411(b) [sic], on confirmation and except as otherwise provided in the Plan or Order of Confirmation, all property interests owned by the estate will automatically re-vest in the Debtor." The Bankruptcy Judge disregarded this plain language in imposing a trust with beneficial ownership of the assets in the creditors.

The status of the Debtor as the owner of the assets is essential to the conduct of his business after confirmation. Public policy requires certainty in real estate titles. Those doing business with the Debtor must be free from the consequences of an order divesting the Debtor's title and exposing their transactions to the review and avoidance powers of a Chapter 7 trustee.

SLI and the Bankruptcy Judge are in error in concluding that the conversion simply replaces the Debtor with a Chapter 7 Trustee to implement the Plan. Contrary to SLI's argument, liquidation and distribution under Chapter 7 must be conducted under the provisions of the Bankruptcy Code—not the Plan.

Pursuant to § 704(a), the Chapter 7 Trustee must collect and reduce to money all of the property of the estate. Liquidation under Chapter 7 would involve the liquidation of property not included in the means for the Plan's execution. *See* Plan, Art. IX. A Chapter 7 trustee must follow the distribution scheme set forth in § 726, and unsecured creditors would not be paid until conclusion of the case. The Plan, on the other hand, provided for the payment of unsecured creditors in stages: class 7(a) claimants were to be paid within eighteen months of the Effective Date, class 7(b) claimants within two years, and claimants with disputed claims were to be paid within sixty days of allowance. Fotokem's claim may be paid under the Plan without waiting for the final allowance or disallowance of SLI's claim, if the Debtor retains assets of sufficient value to cover that disputed claim. Fotokem has been adversely affected by the conversion order.

Authority for the enforcement of a confirmed plan is found in § 1142(b) which provides:

> The court may direct the debtor and any other necessary party to execute or deliver or to join in the execution and delivery of any instrument required to effect a transfer of property dealt with by a confirmed plan, and to perform any act, including the satisfaction of any lien, that is necessary for the consummation of the plan.

Courts have broad authority under § 1142 to order actions required to ensure compliance with a confirmed plan. *See In re Goldblatt Bros., Inc.*, 132 B.R. 736, 741 (Bankr.N.D.Ill.1991); *Harlow v. Palouse Producers, Inc. (In re Harlow Prop., Inc.)*, 56 B.R. 794, 798 (9th Cir. BAP 1985) (directing debtor to sell property in accordance with plan); *In re Coral Air*, 40 B.R. 979, 983–84 (D.V.I.1984) (ordering payments to creditors from certain accounts and requiring that funds be held to implement the plan). The auction procedure described in Paragraph 9.7 of the Plan provided the remedy for the Debtor's failure to sell property within the designated time periods. The Bankruptcy Court has authority pursuant to § 1142 to enforce that remedy and performance of the Plan.[2]

The Bankruptcy Court erred in construing the Debtor's Plan to mean that property of the estate had not fully vested in the Debtor.

For these reasons, it is

ORDERED that the Order of August 21, 2003, in the United States Bankruptcy Court for the District of Colorado, Case No. 00–23048–SBB, is reversed, and this case is remanded to the Bankruptcy Court for further proceedings consistent with this Order.

---

2. The Bankruptcy Court cited § 1142 as additional authority for entry of an order of conversion, but conversion is governed by § 1112, not § 1142.