**IN RE: The SRKO FAMILY LIMITED PARTNERSHIP EIN: 20–033442, Debtor.**

**Case No. 10–13186 SBB**

United States Bankruptcy Court, D. Colorado.

Signed December 15, 2014

---

Dee P. Wisor, Butler Snow LLP, Kathryn Guild Foley, Jenny M.F. Fujii, Lee M. Kutner, Harrie F. Lewis, David M. Miller, Carolin Topelson, Patrick D. Vellone, Denver, CO, for Debtor.

## ORDER APPROVING *MODIFIED* RESERVED PROVISIONS TO THE CONFIRMED PLAN OF REORGANIZATION

Sidney B. Brooks, United States Bankruptcy Court Judge

THIS MATTER came before the Court on October 16, 2014 for an evidentiary hearing on confirmation of the Second Amended Plan of Reorganization Proposed by the Unofficial Mechanics Lienholder Committee (the "Committee") filed on August 28, 2014 [Docket # 1158], as modified by the Modification thereto (the "First Plan Modification") filed on October 6, 2014 [Docket # 1195] and the Second Modification thereto (the "Second Plan Modification") filed on October 15, 2014 [Docket # 1203] (collectively, the "Plan") and the only Objection to the Plan filed by Jannie Richardson on October 1, 2014 [Docket # 1194].

On October 20, 2014, the Court entered its Findings of Fact, Conclusions of Law, and Order Confirming the Plan (the "Confirmation Order") [Docket No. 1209]. Paragraph XX of the Confirmation Order reserved two Plan Provisions concerning 1) the request for a permanent injunction against interference by Janie Richardson, as set forth in Section V.G of Second Plan Modification, and (2) the retention of jurisdiction post-petition, as set forth in Section VI.P.13 of the Second Plan Modification for later determination by this Court (the "Reserved Provisions").

This Court, having considered the Plan and the Objections to the Reserved Provi-

sions, the testimony at the evidentiary hearing, the arguments of counsel, the bankruptcy case files for the Debtor and Jannie Richardson,[1] and applicable legal authority, hereby enters the following Order approving the Reserved Provisions in *modified* forms, as provided herein.

## A. *FACTUAL BACKGROUND*

### *The SRKO Bankruptcy Case*

1. On February 19, 2010, Debtor SRKO Family Limited Partnership ("SRKO") filed the within Chapter 11 Bankruptcy case (the "SRKO Case").

2. At the time of the filing of the case, SRKO was the owner and developer of the project known as Colorado Crossing.

3. SRKO was owned by three separate trusts originally established by Jannie Richardson.

4. The SRKO Bankruptcy Case was authorized by Ms. Richardson in her capacity as a general partner and the authorized agent of SRKO.

### *The Jannie Richardson Bankruptcy Case*

5. On March 25, 2010, Ms. Richardson filed her individual Chapter 11 bankruptcy case, Case No. 10–16450–SBB (the "Richardson Case").

6. In Ms. Richardson's case, the United States Trustee filed a Motion to Dismiss the Case for her various failures to disclose information on the bankruptcy schedules and statement of financial affairs; failure to file Monthly Operating Reports; and failure to file a report pursuant to Fed. R. Bankr.P. 2015.3. [*See* Docket # 81, "United States Trustee's Motion to Dismiss or Convert Chapter 11 Case Pursuant to 11 U.S.C. § 1112(B)" (the "Motion to Dismiss")].

7. Following an evidentiary hearing on the Motion to Dismiss, C. Randel Lewis was appointed the trustee in Ms. Richardson's bankruptcy case. [*See* Docket # 247 in Richardson Bankruptcy Case, "Order Regarding United States Trustee's Motion to Dismiss or Convert Chapter 11 Case and Directing United States Trustee to Appoint Chapter 11 Trustee"; *see also* Docket # 265, "Order Approving United States Trustee's Appointment of Chapter 11 Trustee"].

8. Accordingly, pursuant to this Court's Order, Mr. Lewis became the manager of the limited liability company that served as the general partner to SRKO. [*Id.*]

### *Motions For Sanctions against Ms. Richardson filed in the SRKO and Richardson Cases*

9. On or around February 15, 2013, Mr. Lewis and Counsel for SRKO filed in both the SRKO and Richardson Case a Combined Motion seeking, *inter alia*, sanctions against Ms. Richardson for Civil Contempt of Court. [*See* Combined Motion Docket # 901 in SRKO Case and Docket # 814 in Richardson Case].

10. The Combined Motion alleged that Ms. Richardson, her friends and family members, and other affiliated companies controlled by Ms. Richardson had committed numerous willful violations of the automatic stay by taking various actions to obtain and/or control property of the SRKO and the Richardson bankruptcy estates. [*See id*, pp. 10–14, ¶¶ 36–43].

11. On June 14, 2013, upon stipulation of the parties, this Court issued a Final Agreed Order on the Combined Motion (the "Agreed Order"). [*See* Docket # 968,

---

1. The Court hereby takes judicial notice of the entire case record for the bankruptcy cases of the Debtor (10–13186–SBB) and Jannie Richardson (10–16450–SBB).

SRKO Case and Docket # 923, Richardson Case,].

12. Paragraph 4 of the Agreed Order provides a *permanent* injunction against Ms. Richardson and others, as follows:

IT IS FURTHER ORDERED that *Jannie Richardson, by her approval of this Order, acknowledges and agrees that she has no authority to act on behalf of the SRKO bankruptcy estate or the Jannie Richardson bankruptcy estate,* or any other related entities controlled by the Trustee pursuant to this Court's stipulated order designating the Trustee to manage and control the Debtor's affiliated entities dated June 7, 2011 (Richardson Docket No. 367), and *any other entities or organizations in which the Richardson bankruptcy estate or the SRKO bankruptcy estate have a legal or equitable interest or a direct or indirect economic interest, including, but not limited to, the Colorado Crossing Metropolitan Districts, and that she and her agents, servants, employees, and attorneys, and those persons in active concert or participation with her who receive actual notice of this Order by personal service or otherwise, and each of them, are permanently enjoined and restrained from directly or indirectly (a) holding themselves out or purporting to act as authorized agents of either the SRKO bankruptcy estate or the Jannie Richardson bankruptcy estate, (b) interfering with the conduct or activities of either the SRKO bankruptcy estate* or the Jannie Richardson bankruptcy estate, and *(c) using, dealing with or transferring any property of the SRKO bankruptcy estate* or the Jannie Richardson bankruptcy estate *without the express written consent of the Trustee or an order from this Court,* (d) provided, however, nothing herein shall prohibit (i) the filing of pleadings with this Court or (ii) Jannie Richardson's use or dealing with property brought into Jannie Richardson's estate under § 1115, but the Trustee does not waive any rights relating to such property.

[*Id.,* ¶ 4, emphasis added].

13. Six months after this Court issued the Agreed Order, on December 13, 2013, Mr. Lewis filed a Motion to Enforce the Agreed Order and Request for Sanctions and an Emergency Hearing in the Richardson Case (the "Motion for Enforcement"). [Docket # 973, Richardson Case].

14. The Trustee alleged in his Motion for Enforcement that Ms. Richardson had refused to comply with a different paragraph of the Agreed Order directing her to "resign from said boards when requested in writing by the Trustee or SRKO[.]" [*Id.* at 2, ¶ 4].

15. On December 16, 2013, Mr. Lewis withdrew his Motion for Enforcement stating that the "after the filing of [the] Motion [for Enforcement], and apparently prompted by said filing, Ms. Richardson signed the letter of resignation...." [Docket # 975, Richardson Case at 1].

### Committee's Chapter 11 Plan in the SRKO Bankruptcy Case

16. On August 28, 2014, in the SRKO case, the Informal Lienholder Committee (the "Committee") filed with the Court a proposed Second Amended Plan of Reorganization (the "Committee's Plan"). [Docket # 1158]. The same day, the Committee filed a Supplement to the Committee's Plan. [Docket # 1159, SRKO Case].

17. On October 6, 2014, the Committee filed a Modification to the Committee's Plan (the "First Plan Modification"). [Docket # 1195, SRKO Case].

18. The only objection to confirmation of the Committee's Plan was filed by Ms. Richardson on October 1, 2014 (the "Rich-

ardson Objection"). [Docket No. 1194, SRKO Case].

19. Initially, Ms. Richardson filed objections to following two provisions of the Committee's Plan: (1) the Exculpation Relief Relating to Claims and Releases set forth in Sections V.E. and F. of the Plan; and (2) the Injunctive Relief Provision set forth in Section V.G. of the Plan. [*Id.*].

20. In Response to Ms. Richardson's objection, on October 15, 2014, the Committee filed a Second Modification to the Committee's Plan (the "Second Modification"), amending the provision on V.G. of the Plan to apply only to Ms. Richardson. [Docket # 1203, SRKO Case at 3, ¶ V.G.].

21. Provision V.G. under the Second Modification reads as follows:

ARTICLE V EFFECT OF CONFIRMATION OF THE PLAN

G. Injunction Against Interference by Jannie Richardson. JANNIE RICHARDSON IS PERMANENTLY ENJOINED FROM, DIRECTLY OR INDIRECTLY, HOLDING HERSELF OUT AS, OR PURPORTING TO ACT AS, AN AUTHORIZED AGENT OF REORGANIZED SRKO, AND FROM ENTERING ANY PROPERTY OWNED BY REORGANIZED SRKO WITHOUT THE PRIOR WRITTEN CONSENT OF AN AUTHORIZED AGENT OF REORGANIZED SRKO. [*Id.*, emphasis in original].

22. Additionally, the Second Modification added a new paragraph VI.P.13 to the Committee's Plan, which provision proposed for this Court to retain jurisdiction in certain matters arising post-confirmation. [*Id.* at 4].

23. New Provision VI.P.13. reads as follows:

ARTICLE VI. OTHER PLAN PROVISIONS

P. Retention of Jurisdiction

. . .

13. Hear any claims or causes of action asserted by the Plan Proponents or REORGANIZED SRKO against any **Richardson Party** arising after the Effective Date involving Colorado Crossing.

[*Id.*, emphasis in original and supplied].

24. The Confirmed Plan defines "**Richardson Party**" to include—

. . . any Insider or Affiliate of the Debtor, including, but not limited to, Jannie Richardson, Duk, LLC, Moon, LLC, The Allen Richardson Dynasty Trust; Allen Richardson; The Jessica Stinson Dynasty Trust; Jessica Stinson; The Jeffrey Stinson Dynasty Trust; Jeffrey Stinson; Da Nam Ko; Sunshine Home Development, Inc.; Sunshine Home Management, LLC; Sunshine Development, LLC; Sunshine Development; JRKO, LLC; Geosun, LLC; Jannie Richardson, LLC; Spring Water Loft, LLC; Ho, LLC; Jessica, LLC; JR Movie, LLC; and any individuals or entities who are Affiliates or Insiders of the foregoing; and any entities that may be formed in the future which are Affiliates or Insiders of the foregoing, but excluding the Trustee.

[Docket # 1158, SRKO Case, pp. 12–13, ¶ 86].

25. At the Confirmation Hearing on October 16, 2014, Ms. Richardson withdrew her objection to the Exculpation Relief Relating to Claims and Releases set forth in Sections V.E. and F. of the Plan.

26. However, Ms. Richardson renewed her objection to the modified Injunction Against Interference by Ms. Richardson set forth in Section V.G of the Plan, and raised an objection to the additional provision providing for the retention of jurisdiction set forth in Section VI.P.13 of the Plan.

## B. *JURISDICTION*

This Bankruptcy Court has jurisdiction over this Chapter 11 Case pursuant to 28 U.S.C. §§ 157 and 1334. Whether the Court should approve the Reserved Provisions set forth in the Plan is a "core proceeding" pursuant to 28 U.S.C. §§ 157(b)(2)(L) and (O).

## C. *DISCUSSION*

### I. *Injunction against Ms. Richardson*

As noted above, here the Committee seeks to include in the Plan a *permanent* injunction against Ms. Richardson, prohibiting her from holding herself out as an authorized agent of New Crossings, Inc., the Reorganized Debtor ("New Crossings"), and from entering any property owned by New Crossings, without the prior written consent of New Crossings.

It is undisputed by the parties that Ms. Richardson has no legal right to take either of these actions, and that, were she to do either, her actions would be wrongful. However, the Committee has argued that based on Ms. Richardson's prior conduct of running interference in the SRKO and Richardson Cases, the narrowly tailored permanent injunction being sought against her is necessary and appropriate to allow a successful consummation of the Plan.

■ The United States Supreme Court has held that—

[a]ccording to the well-established rules of equity, [a party] ... must satisfy a four-factor test before a court may grant such relief[ ] ... [by] demonstrate[ing]: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.[2]

### (a) Irreparable Harm

■ Under the four-factor test established by the Supreme Court, the Committee must first establish that absent an injunction imposed against Ms. Richardson, New Crossings would suffer irreparable harm. Irreparable injury often derives from the nature of the violation.[3]

Here, at the hearing on October 16, 2014, the Committee presented the testimony of C. Randel Lewis, the Chapter 11 trustee in the companion Chapter 11 case of Ms. Richardson, and James Sorenson, the President of Stresscon, one of the members of the Committee and the proposed Chief Executive Officer of New Crossings regarding Ms. Richardson's past

---

**2.** *eBay Inc. v. MercExchange, L.L.C.,* 547 U.S. 388, 391, 126 S.Ct. 1837, 164 L.Ed.2d 641 (2006). Prior to the Supreme Court's opinion in *eBay Inc. v. MercExchange, L.L.C.,* courts in the Tenth Circuit had applied similar standards in considering permanent injunctions. *See Hackwell v. United States,* 2008 WL 2900933, 2008 U.S. Dist. LEXIS 56641 (D.Colo. July 23, 2008) (Footnote # 2); *see also Lakeside at Pole Creek, LLC v. Tabernash Meadows LLC (In re Tabernash Meadows, LLC),* 2005 WL 375660, 2005 Bankr.LEXIS 210 (Bankr.D.Colo.2005, Judge Tallman) ("In the state of Colorado 'generally, a party seek-

ing a permanent injunction must show that [a] the party has achieved actual success on the merits; [b] irreparable harm will result unless the injunction is issued; [c] the threatened injury outweighs the harm that the injunction may cause to the opposing party; and [d] the injunction, if issued, will not adversely affect the public interest.' ") (internal citations omitted).

**3.** *Nat'l Ski Areas Ass'n v. United States Forest Serv.,* 910 F.Supp.2d 1269, 1289 (D.Colo. 2012).

conduct and the potential harm from similar conduct in the future.

*Mr. Lewis' testimony*

During the October 16, 2014 hearing, Mr. Lewis testified that due to Ms. Richardson's consistent interference in the SRKO and Richardson bankruptcy cases, the Colorado Crossing project has a reputation in the marketplace as a troubled project and that there remained confusion in the marketplace as to who was in control of the Colorado Crossing real estate development.

Mr. Lewis further testified as to the actions that he has been required to take since his appointment as the Chapter 11 trustee to secure control over the assets of the estate, as Ms. Richardson continued to attempt to exercise control over them. In particular, Mr. Lewis testified that, shortly after his appointment, he learned that Ms. Richardson had modified the operating agreement of Duk, LLC, which was then the managing general partner of the Debtor in this case, to substitute her sister for herself as the manager. Thus, Mr. Lewis was compelled to commence proceedings in this Court to secure control over the Debtor and its estate.

Similarly, in late 2013, over two and a half years after the appointment of Mr. Lewis as trustee of Ms. Richardson's bankruptcy estate, Ms. Richardson directed the assignment of certain purchase contracts in order to change the composition of the board of directors of the metropolitan districts formed in connection with the planned development of Colorado Crossing, and caused the metropolitan districts to enter into an acquisition agreement designed to reimburse one of Ms. Richardson's affiliate entities for claimed expenses it allegedly incurred in the development of Colorado Crossing. When Mr. Lewis learned of these actions, he attended the noticed metro district board meeting, only to discover that neither district counsel, nor the independent member of the board, had a full understanding of the impact of the Debtor's bankruptcy filing on the operations of the districts, nor did they understand or appreciate that only the trustee, as the party in control of all the real estate within the districts, had authority to elect board members and direct the action of the districts.

Mr. Lewis was once again compelled to commence proceedings against Ms. Richardson to obtain her compliance, to secure control of the boards of the metro districts, and to cancel the proposed reimbursement agreement by filing a Combined Motion in the SRKO and Richardson Cases. In the Agreed Order resolving the Combined Motion, Ms. Richardson agreed to entry of a permanent injunction against her and certain affiliates, which injunction, *inter alia,* prohibited Ms. Richardson from holding herself out as an authorized agent of the Debtor, interfering with the conduct or activities of the Debtor's bankruptcy estate.

Further, Mr. Lewis testified that he and Ms. Richardson agreed to a protocol by which she would secure prior advance consent of the Trustee if she wished to visit the Colorado Crossing project, or to arrange to have contractors, investors, or other third parties inspect the project; but that Ms. Richardson repeatedly and regularly violated the agreed protocol. Mr. Lewis would receive calls, on average every two months, from security guards advising him that either Ms. Richardson, or someone acting on her behalf, was on the property. Since security guards were not present at times, Mr. Lewis did not know how many additional violations of the protocol occurred that he never learned of.

*Mr. Sorensen's testimony*

Additionally, Mr. Sorensen, appearing for the Committee, testified that prior to

the filing of the SRKO and Richardson bankruptcy cases, he had dozens of conversations with Ms. Richardson where he tried to come up with a solution for the troubled Colorado Crossing project, and was therefore very familiar with the intense and tenacious nature of Ms. Richardson. Specifically, Mr. Sorenson described Ms. Richardson as "an extraordinary" and "aggressive" person.

Mr. Sorensen further testified that should Ms. Richardson access the New Crossings' property without its prior written consent, such actions would give the impression of a level of control by Ms. Richardson of New Crossings that could create confusion in the marketplace. Mr. Soresen further testified that such confusion in the marketplace over control of Colorado Crossing could be devastating to its successful development.

Mr. Soresen further testified that similarly, should Ms. Richardson hold herself out to potential developers, investors or purchasers, as someone in control of the project, those actions could directly interfere with future development and lot sales. Any potential developer, purchaser or investor who is dissuaded from contacting the proper owner, New Crossings, as a result of the actions Ms. Richardson, is a potential lost transaction.

This Court finds the testimony of Mr. Lewis and Mr. Sorensen to be credible.

*The Case Record*

Moreover, this Court itself has on numerous occasions in open court and in orders issued in the SRKO Case and the Richardson Case advised and ordered Ms. Richardson that she is not authorized to act on behalf of SRKO or the Richardson estate; that she is not authorized to exercise control over the Colorado Crossing property; and that she is prohibited and enjoined from taking any actions to interfere with the Ms. Lewis' control and management of SRKO and Colorado Crossing. Furthermore, the Court has on numerous other occasions admonished Ms. Richardson to cooperate with the Mr. Lewis.

Based on the testimony presented, in conjunction with this Court's own observations of Ms. Richardson over the past two and a half years, the Court finds that Ms. Richardson's repeated actions in attempting to exert control over property of the SRKO estate; her trespassing on the Colorado Crossing property; her demonstrated disdain for the people and procedures that are part of this bankruptcy case; her resistance to respect the authority of the Court and the Trustee, appointed in her case are evidence of her propensity to continue to engage in such violative acts in the future. More specifically, the Court finds that as previously demonstrated by Ms. Richardson, absent an injunction, there is a real and imminent likelihood that she will continue to engage in conduct that she has repeatedly undertaken during this bankruptcy case, with the ultimate intent of attempting to regain control of the Colorado Crossing project, despite the confirmation of the Plan.

Indeed, insofar as this Court is advised, Ms. Richardson's obstinate conduct during the pendency of the SRKO and Richardson Cases relented only after the Mr. Lewis and Counsel for SRKO sought and obtained a permanent injunction against Ms. Richardson in the form of the Agreed Order. Even then, the record reflects that Ms. Richardson's compliance with certain terms of the Agreed Order was not obtained until after Mr. Lewis filed a subsequent Motion for Enforcement in the Richardson Case.

Future interference by Ms. Richardson in the operations and functioning of New Crossings will likely perpetuate the confusion that has existed in the marketplace

over ownership and control of the New Crossing project and development. The potential loss of sales or development partners would result in irreparable harm to New Crossings.

Therefore, based on the testimony provided to this Court and this Court's own experience with Ms. Richardson, the Court concludes that factor one favors the Committee.

### b. Remedies at Law

Next, the Committee must show that remedies available at law are inadequate to compensate for the injury New Crossings may suffer as a result of Ms. Richardson's continuing interference.

The Committee asserts that New Crossings has no adequate remedy at law and a suit for damages cannot adequately compensate New Crossings for the harm it may suffer because (a) Ms. Richardson is a debtor in her own bankruptcy case and thus her ability to satisfy any award of damages is doubtful; and (b) having to establish damages under these circumstances would place an unreasonable burden on New Crossings as it is likely impossible to quantify the damages suffered as a result of the loss of a potential transaction or from confusion in the marketplace regarding Ms. Richardson's on-going role in the project.

Ms. Richardson proposes that adequate remedies exist under state law to prohibit Ms. Richardson from engaging in ongoing misconduct concerning New Crossings. Ms. Richardson cites legal causes of action for criminal trespass or tort actions for intentional interference with contract and interference with prospective business advantage as examples of such remedies.

However, Ms. Richardson has previously demonstrated an unyielding attitude of defiance against this Court's various orders concerning her improper interference in the administration of the SRKO and Richardson Bankruptcy estates. This Court is not convinced that the mere possibility of criminal prosecution for trespass or potential lawsuits for tortious interference with the operations of a business would sufficiently dissuade Ms. Richardson from repeating her historical patterns of interfering with the new project of the Reorganized Debtor.

For these reasons, factor two weighs in favor of the Committee.

### c. Balancing of Harms

Ms. Richardson argues that because she is in the real estate business, having a *permanent* injunction placed against her would unduly affect her reputation in the real estate business community. Ms. Richardson concedes however that any such harm to her would be slight in nature.

Conversely, the Committee argues that Ms. Richardson suffers no harm as a result of an injunction from being prohibited from engaging in actions which she has no legal right to take. The Committee further argues that in the event Ms. Richardson continues with her historic pattern of interfering with the Colorado Crossing project, New Crossings may suffer irreparable and incalculable harm.

This Court finds both arguments to be persuasive.

As an initial matter, the Court finds that the fact that the language of the injunctive provision itself provides for a narrow and qualified prohibition against Ms. Richardson in that she is allowed to be present on the property of the reorganized Debtor *with prior written permission of the Reorganized Debtor,* makes said injunction less burdensome and less harmful to Ms. Richardson.

■ Nonetheless, the Court finds that a permanent and perpetual injunction against Ms. Richardson will cease to provide any benefit to New Crossings *after* the Confirmed Plan has been successfully launched and partially, if not substantially consummated, but that such an indefinite, ongoing injunction may potentially have a negative impact, however slight, upon Ms. Richardson's future in the real estate industry. Therefore, the third factor weighs in favor of the Committee, but only in terms of a *temporary* injunction, in order to allow the reorganized Debtor the time to successfully undertake its Plan.

### d. Public Interest

Issuing the permanent injunction against Ms. Richardson will not adversely affect the public's interest. The Court finds that the fourth factor does not apply to the facts of this case.

For reasons stated above, the Bankruptcy Court finds that under the four-factor test established by the Supreme Court, applicable legal standards strongly support and equity demands the entry of an injunction against Ms. Richardson in order to protect the interests and to advance the likelihood of success of New Crossings under the terms of the Confirmed Plan.

Important to this Court's conclusion is the fact Ms. Richardson herself has previously consented to such a *permanent* injunction in the Agreed Order issued by this Court. This Court believes that the previous injunction has, to a large extent, been effective in obtaining Ms. Richardson's compliance.

■ However, this Court is aware that "an injunction must be narrowly tailored to remedy the harm shown." [4] Furthermore, "the decision to grant or deny permanent injunctive relief is an act of equitable discretion by the [ ] court." [5]

While the Court finds that an injunction against interference by Ms. Richardson set forth in Section V.G. of the Plan is fair and necessary to the success of the Debtor's reorganization in light of the circumstances presented, it also finds that the scales tip against the perpetual continuation of such an injunction against her *after* the Confirmed Plan has been successfully launched and partially, if not substantially, consummated. Therefore, the Court finds that a *temporary*, eighteen month injunction, with the possibility of further extensions of the injunction, if cause is shown, is the most equitable, balanced and appropriate remedy to ensure Ms. Richardson's compliance during the implementation of the provisions of the Confirmed Plan.

## II. *Retention of Jurisdiction*

The Second Reserved Provision seeks to have this Court retain jurisdiction regarding any claims or causes of action asserted by the Committee or New Crossings against any Richardson Party involving Colorado Crossing that arises post-confirmation.

■ A plan of reorganization may provide for the retention of jurisdiction over post-confirmation acts as appropriate and necessary for the consummation, implementation and enforcement of the plan.[6]

---

**4.** *ClearOne Communs., Inc. v. Bowers*, 643 F.3d 735, 752 (10th Cir.2011) (citing *Garrison v. Baker Hughes Oilfield Operations, Inc.*, 287 F.3d 955, 962 (10th Cir.2002)).

**5.** *Hackwell v. United States*, 2008 WL 2900933, 2008 U.S. Dist. LEXIS 56641 (D.Colo. July 23, 2008) (citing *eBay Inc. v.*

*MercExchange, L.L.C.*, 547 U.S. 388, 391, 126 S.Ct. 1837, 164 L.Ed.2d 641).

**6.** 11 U.S.C. §§ 1123, 1142(b); *In re Lacy*, 304 B.R. 439 (D.Colo.2004) ("After confirmation, the Bankruptcy Court retains jurisdiction to

Post-confirmation jurisdiction may be exercised even after entry of a final decree closing the case.[7]

Here, Ms. Richardson is a debtor in her own Chapter 11 bankruptcy case pending before this Court. Her estate will receive 35% of the stock in the Reorganized Debtor under the Committee's Plan. That stock is the single most valuable asset of Ms. Richardson's estate. Ms. Richardson has a statutory duty to cooperate with the Trustee in her case regarding the administration of her estate, and this Court retains jurisdiction over her actions to ensure such compliance.[8]

█ Nonetheless, it is appropriate and proper for the Court to retain jurisdiction, as provided for in Article VI.P.13. of the Plan, against *any* causes of action and against *any* Richardson Party, as defined by the Confirmed Plan, that may arise post-petition *to the extent that such causes of action involve Colorado Crossings.*

However, the Court believes that such a proceeding is a matter "arising in" or "related to" this bankruptcy case, and thus this Court's jurisdiction is not exclusive. Rather, its jurisdiction is concurrent with the jurisdiction of other courts of competent jurisdiction.[9]

█ Ms. Richardson has argued that this Court's jurisdiction is circumscribed by the Supreme Court's ruling in *Stern v. Marshall.*[10] The Court notes however, that to the extent that a matter under provision VI.P.13 of the Plan implicates a

*Stern issue* and the Court is constitutionally barred from deciding and entering final orders in the matter, this Court is nonetheless not prohibited from holding a hearing on such claims and issuing proposed findings of fact and conclusions of law for purposes of a final judgment to be entered by the district court.[11]

For these reasons, the Bankruptcy Court finds that it may properly retain jurisdiction over the matters set forth in Provision VI.P.13 of the Plan, but that such jurisdiction is concurrent with the jurisdiction of other courts of competent jurisdiction.

### D. CONCLUSION AND ORDER

Accordingly, it is hereby ORDERED, ADJUDGED AND DECREED that the Reserved Provisions are **APPROVED** in their *modified* form, as provided herein, and as outlined below in bold (together ("Modified Reserved Provisions").

I. Provision V.G: Injunction Against Interference by Jannie Richardson.

(a) Jannie Richardson is **temporarily** enjoined, **for a period of eighteen months following the date of the issuance of this Order,** from, directly or indirectly, holding herself out as, or purporting to act as, an authorized agent of Reorganized SRKO, and from entering any property owned by Reorganized SRKO without the prior written consent of

interpret, enforce, or aid the operation a plan of reorganization.")

7. *Id.*

8. 11 U.S.C. § 521(a)(3).

9. 28 U.S.C. § 1334(b).

10. *Stern v. Marshall,* —— U.S. ——, 131 S.Ct. 2594, 180 L.Ed.2d 475 (2011) (holding that

bankruptcy courts lack the constitutional authority to enter final and binding orders on claims based exclusively on rights under state law).

11. *See Exec. Bens. Ins. Agency v. Arkison,* —— U.S. ——, 134 S.Ct. 2165, 189 L.Ed.2d 83 (2014).

an authorized agent of Reorganized SRKO.

(b) The eighteen month injunction against Ms. Richardson may be extended for good cause, if proven after notice and hearing. If warranted, a Motion may be filed with the Court by the Committee, New Crossings, Ltd., the Trustee in the Jannie Richardson's Chapter 11 Case, or any other interested party for purposes of allowing the Debtor more time to fully and effectively consummate the Plan of reorganization.

II. Provision VI.P: Retention of Jurisdiction.

13. (a) Hear any claims or causes of action asserted by the Plan Proponents or REORGANIZED SRKO against any Richardson Party arising after the Effective Date involving Colorado Crossing.

(b) The Court's jurisdiction under subparagraph (a) is not exclusive, but rather concurrent with the jurisdiction of other courts of competent jurisdiction.

IT IS FURTHER ORDERED that the Modified Reserved Provisions are hereby incorporated, in their entirety, into the Confirmed Plan and Confirmation Order, SRKO Case, Docket # 1158 and Docket # 1209, respectively.